**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>        **Plaintiff,**<br><br>    **v.**<br><br>**BOGDANA ALEXANDROVNA MOBLEY,<br>aka BOGDANA ALEXANDROVNA<br>OSIPOVA,**<br><br>        **Defendant.** | **Case No.** 17-CR-10142-EFM |

**UNITED STATES' TRIAL BRIEF**

For the convenience of the Court and to promote efficiency at trial, the United States submits this Trial Brief outlining the basis for admission, or exclusion, of certain evidence or testimony likely to be presented at trial. This brief may also aid the Court in ruling on motions or objections made during the course of trial.

**I.      Order of Trial**

 "A district court possesses considerable discretion in governing the presentation of evidence, and its decisions will not be disturbed absent manifest injustice to the parties." *Comcoa, Inc. v. NEC Telephones, Inc.*, 931 F.2d 655, 663 (10th Cir.1991); see also *United States v. Kelley*, 187 F. App'x 876, 888 (10th Cir. 2006).

For its case-in-chief, the United States intends to focus solely on the elements of the charged offenses, with little background information, to avoid re-litigation of the divorce/custody case. The United States does not intend to undertake a preemptive rebuttal of an affirmative defense that may not be presented. The United States advises the Court that it will affirmatively seek to limit the scope of cross-examination during its case-in-chief for reasons articulated below.

The United States recommends this approach to avoid confusion of issues (particularly in relation to the differing evidentiary burdens[1]), to clarify relevance and hearsay determinations, and to prevent re-litigation of past grievances in the domestic case.

## II.      Government's Case-in-Chief

The United States' presentation will primarily involve testimony from the victim, Brian Mobley, and a process-server, Michael Kasel, along with certain documentary evidence.

As a percipient witness, Brian Mobley is a witness qualified to testify to all of the various elements associated with the offenses. He has personal knowledge of the birth and parentage of S.M. He has personal knowledge relating to the proceedings in the divorce case (Sedgwick County Domestic Case 14DM1599). He has personally heard or received the various inculpatory statements made to him by the defendant relating to each charge, including the manner and location of those communications which involved the transmission via interstate and foreign commerce. He also has personal knowledge regarding the whereabouts of the child, S.M., having traveled to Russia and seen her in person.

The United States intends to present certain documents from the Sedgwick County domestic case via Brian Mobley. Pursuant to Federal Rule of Evidence (FRE) 902(2) or (4), the Sedgwick County court records are self-authenticating and require no extrinsic evidence of authenticity in order to be admitted.  Alongside Brian Mobley's testimony, these records will establish facts relating to S.M.'s age, Brian's parental rights to S.M., and that S.M. was moved to Russia by the defendant after service of domestic orders of joint custody.

---

[1] While the government bears the burden to prove the elements beyond a reasonable doubt, the defendant bears the burden of proving her affirmative defense by a preponderance of the evidence. See, e.g., *Dixon v. United States*, 548 U.S. 1, 8 (2006).

The United States also intends to present excerpts of communications from the defendant received by Brian Mobley. As the recipient of those communications (and the person that preserved them), Brian Mobley is qualified to testify to the contents of those communications. The defendant's communications are not hearsay under FRE 801(d)(2)(A) when offered by the United States.

Because some of the records (both from Sedgwick County and the communications) contain allegations or statements of the defendant which may relate to her affirmative defense, the United States intends to redact those portions. The United States contends that those statements constitute inadmissible hearsay under FRE 802 until such time as the defendant testifies and is subject to cross-examination regarding those statements. The rule of completeness, which began as a common-law rule and is now partially codified in FRE 106, does not give the defendant a general right to introduce selected statements to try to counter the statements in the proponent's offered segment. See *United States v. Williston*, 862 F.3d 1023, 1038 (10th Cir.), cert. denied, 138 S. Ct. 436, 199 L. Ed. 2d 324 (2017). "Only the portions of a statement that are relevant to an issue in the case and necessary to explain or clarify the already-admitted portions need be admitted." *Id*. In the government's case-in-chief, the relevant portions are those relating to the charged offenses, including those statements of the defendant acknowledging S.M.'s birth, S.M.'s parentage, the Sedgwick County child custody order, her removal of S.M. to Russia (and retention of S.M. in Russia) in derogation of that order, and the extortionate threats. The defendant's self-serving statements that appear in the records or communications do not explain or contextualize her admissions or threats - the "rule of completeness" does not authorize introduction of those statements which may relate to defendant's potential affirmative defense. The defendant must testify in order to have her self-serving statements admitted under the Federal Rules of Evidence.

With regard to Michael Kasel, the United States anticipates his testimony will be brief, relating to the service of the Sedgwick County paperwork on the defendant and the defendant's efforts to avoid service.

The United States will also introduce records obtained from Aeroflot, showing the defendant's attempt to purchase tickets, and subsequent purchase and use of tickets, for travel to Russia with S.M. By agreement of the parties, these records (and the explanation of codes) will be admitted by stipulation without the record custodian's testimony.

## III.    Limiting the scope of inquiry during the Government's case-in-chief

The United States intends to limit the scope of its case-in-chief to the elements of the offenses. The United States recommends this approach to avoid confusion of issues (particularly in relation to differing evidentiary burdens), to clarify relevance and hearsay determinations, and to prevent re-litigation of past grievances in the domestic case.

 For instance, if the defense were allowed to inquire of Brian Mobley as to issues relating to domestic violence[2], but then decide against presenting the affirmative defense, those matters would have been irrelevant under FRE 401. The introduction of those matters would promote unfair prejudice and confusion of issues under FRE 403. The introduction of those matters would serve to harass and demean the victim, Brian Mobley.

Similarly, the United States' rebuttal evidence would only be relevant under FRE 401 and 403 in *response* to an affirmative defense. Because the affirmative defense in this case hinges on

---

[2] The defendant has previously testified under oath that there were only four possible instances of physical violence. See Doc. 89, Transcript of Motion Hearing, p. 57. In none of those events did she describe another witness, other than Brian Mobley, being present. With this in mind, her defense rests on the testimony of two people: herself and Brian Mobley.

the defendant testifying[3], the United States encourages this Court to properly limit the scope of inquiry during the government's case-in-chief. A trial court may impose reasonable limits on defense counsel's inquiry to take account of such factors as harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that would be repetitive or only marginally relevant. See *Olden v. Kentucky*, 488 U.S. 227, 232 (1988); *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). In this case, allowing the defense to undertake broad inquiry into matters pertaining to a potential affirmative defense during the government's case-in-chief risks introduction of irrelevant evidence, harassment of the victim Brian Mobley, prejudice to the government, and confusion of issues before the jury. To the contrary, limiting the scope of inquiry during the government's case-in-chief will not prejudice the defense in any way – if they elect to present an affirmative defense, they will be able to call witnesses (including those previously called by the government) to present their evidence.

## IV.    Defendant's Affirmative Defense

The "domestic violence" defense in 18 U.S.C. §1204(c) contemplates actual physical or sexual violence, but not financial, emotional, or psychological abuse.  See *United States v. Nixon*, 901 F.3d 918, 920 (7th Cir. 2018)("Indeed, we could not equate 'violence' with 'abuse' without converting every child-kidnapping prosecution into a replay of the child-custody proceedings, in which the defendant would try to re-litigate the domestic-relations case by showing that he or she really should have received custody.") As the *Nixon* court observed, the statute speaks of "domestic violence" rather than abuse more generally, and while such may not require as much

---

[3] In part, this is because the defendant is the only witness to her internal reason for leaving. Additionally, from testimony previously provided to this Court by the defendant (see Doc. 89, Transcript of Motion Hearing), there are no other witnesses to the alleged domestic violence beyond the defendant herself. Moreover, evidence exists indicating the allegations of the defendant are pure fabrication, as will be discussed below in more detail. Suffice to say, the United States encourages this Court to exercise caution as it determines the propriety of examination.

physical contact as other parts of the Criminal Code that use the word "violence," but it cannot be satisfied by emotional, psychological or financial abuse. *Id.*

The defendant has previously testified under oath that she experienced only three[4] instances of physical or sexual violence. See Doc. 89, Transcript of Motion Hearing, p. 57. Based on her earlier testimony, she alleged a rape occurred on August 2, 2013,[5] an allegation of a gun being held to her head sometime in December 2013,[6] and lastly an allegation of domestic battery on December 22, 2013.[7]

There are reasons for this Court to exercise caution with the defendant's presentation.[8] Aside from the dubious nature of the allegations (as demonstrated in the November 16, 2018 hearing) and their temporal distance from the act of removal, the United States has compelling evidence that contradicts these allegations. First, medical records obtained by the United States indicate that the defendant *denied* physical abuse, sexual abuse, mental abuse, or any history of domestic violence, when asked by OB/GYN staff as part of her social history on January 7, 2014 (roughly 2 weeks after the last instance alleged by the defendant). To be clear, this is not a failure

---

[4] One of these instances is categorically not "domestic violence" under *Nixon*. The punching of a door incident, described by the defendant with minimal detail, involved no threat to her:

> "Q: If it's directed at you. But you've not described any argument leading up to it, and you don't remember anything that led up to it. Correct?
>
> A: I don't remember, no."

Doc. 89, Transcript of Motion Hearing, p. 48. In the absence of a threat or any context that suggests the conduct was directed at the defendant, this incident does not qualify as "domestic violence."

[5] Id. at 76.

[6] Id. at 46-47.

[7] Id. at 55. In her testimony, she states it occurred the day before Christmas, but the police report from 2013 shows she reported it was three days prior, on the 22nd.

[8] This includes the defendant's allegations of sexual assault against the jailer in Butler County. Despite her assertion, the incident did not constitute a sexual assault as the defendant described it.

to report, but instead responding "No" when asked about the subject. Second, recordings of the defendant made by Brian Mobley contradict her claims of domestic violence. In relation to the rape allegation, one recording captures the defendant describing the incident in the following way, "I said do not cum on me. You came on me. This is the truth. I forgave you for that…" That recording (which will be presented in rebuttal) directly contradicts the allegation of rape – rather than a rape, these statements indicate a consensual sexual encounter followed by anger at the mess. Another recording (on December 22, 2013) indicates the defendant battered Brian Mobley after he returned home for the evening, hid his phone, and refused to call 911 when requested by Brian. That recording includes Brian's statements that she hit him, with her responding, "You gonna cry baby?"[9] The recording also captures Brian leaving the residence for the evening. Interestingly, this recording associates to the last reported allegation previously claimed by the defendant – the report made three days late, on December 25, 2013. Notably absent from any of these recordings (which span the month of December) is any reference or callback by the defendant to the gun-to-the-head incident that allegedly occurred during this period. It is as though it never happened.

With these things in mind, the United States strongly encourages the Court to limit the scope of cross-examination during the Government's case-in-chief, as such will clarify objections based on relevance or hearsay. The defendant may still present her defense, without prejudice, but it will be less confusing for both the Court and the jury.

## IV.     Government's Rebuttal Evidence

Assuming the defendant presents evidence of an affirmative defense, and assuming that presentation aligns with the testimony previously presented by the defendant, the United States will present evidence from several sources that rebut or refute the allegations.

---

[9] Baby, in this context,was not conveyed as a term of endearment but of derision.

As discussed above, the United States will present medical records from Associates in Women's Health. These records will be presented via Brandy Hoffman, as the custodian of the records. These records would be admissible under a variety of evidentiary rules, including FRE 803(6) as records of regularly conducted activity, FRE 803(4) as statements pertinent to medical treatment (her pregnancy), and FRE 801(d)(2)(A) as statements offered against an opposing party. These records would be relevant for the reasons articulated in the preceding section.

The United States also intends to introduce recordings of the defendant, made by Brian Mobley, which contradict her claims of domestic violence. These recordings are relevant for the reasons articulated in the preceding section. These recordings also tend to show the defendant was not remotely afraid of Brian Mobley; that, on the contrary, she was frequently aggressive, threatening, and engaged in physical violence (including spitting on Brian Mobley). These recordings also tend to show that Brian Mobley did not engage in aggressive, threatening, or physically violent behavior, even when provoked. In addition, Brian Mobley would be testify to his experience as the recipient of abuse, threats of abuse, and repeated threats to harm (abort) their unborn child. Additional excerpts from the Skype communications related to these issues may also be presented via Brian Mobley.

The United States also intends to introduce testimony from Dr. Daran Jensen, the defendant's OB/GYN, regarding her request to be placed on bed-rest[10] so that her husband could come home to tend to S.M. This request, made by the defendant in February 2014 (shortly after her return from Russia) tends to show that the defendant was not afraid of Brian Mobley, because no violence was occurring. This request is also more temporally proximate to the date of removal (on April 2, 2014) and bears on the defendant's state of mind.

---

[10] The defendant has repeatedly asserted she was in a high-risk pregnancy. The medical records indicate this is not true.

The United States also intends to introduce testimony from two colleagues of Brian Mobley, who witnessed the defendant come to Brian's work in March 2014. They will also testify the defendant filed Protection from Stalking lawsuits against both of them (both of which were dismissed). This testimony tends to show the defendant was not afraid of Brian Mobley, that the defendant herself resorted to threats and intimidation, and that the defendant well knew how to access (and abuse) legal processes. This testimony is similarly more temporally proximate to the date of removal (on April 2, 2014) and bear on the defendant's state of mind.

The United States may also call Jennifer Bruening, a therapist who provided individual and couples counseling services to Brian Mobley and the defendant. Testimony from Ms. Bruening may corroborate Brian Mobley's account of being the recipient of physical abuse and threats of abuse. That testimony may be presented without violating the therapist-patient privilege[11] of the defendant. Depending on the evidence presented by the defendant, the therapist-patient privilege may be waived (for instance, if she claims to have discussed these matters with her therapist) or if she claims she feared for her safety See, e.g., *Dixon v. City of Lawton, Oklahoma*, 898 F.2d 1443, 1450 (10th Cir. 1990) (noting Model Rule provides "There is no privilege under this rule as to communications relevant to an issue of the mental or emotional condition of the patient in any proceeding in which he relies upon the condition as an element of his claim or defense.").

By referencing or briefing the above evidence, the United States does not intend to limit itself in any way to the listed evidence.

Respectfully submitted,

STEPHEN R. McALLISTER
United States Attorney

---

[11] See *Jaffee v. Redmond*, 518 U.S. 1 (1996) (holding federal law recognizes psychotherapist-patient privilege).

s/Jason W. Hart
JASON W. HART
Kan. S. Ct. No. 20276
Assistant U.S. Attorney
District of Kansas
301 N. Main, Ste. 1200
Wichita, Kansas 67202
Tel: 316-269-6481
Fax: 316-269-6484
Email: Jason.hart2@usdoj.gov

**CERTIFICATE OF SERVICE**

I certify that on March 4, 2019, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to Murdoch Walker II, Joshua Lowther, and Craig Divine, attorneys for defendant.

s/Jason W. Hart
JASON W. HART
Assistant United States Attorney